Argued December 10, 1969, reargued June 2,
affirmed July 1, 1970

## GUNDERSON BROS. ENGINEERING CORP.,
*Respondent, v.*
## STATE TAX COMMISSION, *Appellant.*

471 P2d 802

*Donald C. Seymour,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General,

and Alfred B. Thomas, Assistant Attorney General, Salem.

*Morris J. Galen,* Portland, argued the cause for respondent. With him on the brief were Tonkon & Galen, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN, DENECKE, HOLMAN, TONGUE and SCHWAB, Justices.

DENECKE, J.

The issue is whether certain personal property of the plaintiff taxpayer is exempt from the assessment of a personal property tax because of the Oregon Free Port Act.

The principal section of the Act (ORS 307.810) provides:

> "(1) Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990."[1]

---

[1] Weyerhaeuser Co. v. Tax Comm., 244 Or 561, 419 P2d 608 (1966), construed this statute; however, the issues therein are not comparable to those in this case. We did note that the

The facts were largely stipulated. The taxpayer brought wheels, axles, frames and springs into Oregon and put them together to form trucks for railroad cars. The components of the trucks were held together largely by pressure from the weight of the components. Railroad car frames were placed on the trucks where they were held only by the weight of the frames. The railroad cars were destined for and were shipped out of state. The tax court held the component parts of the trucks and the trucks were entitled to the free port exemption and not subject to personal property tax. 3 OTR 315 (1969).

If we were to interpret these facts and the statute, apart from any stipulation, we would have grave doubts whether the taxpayer is entitled to the free port exemption; however, the Commission has stipulated that certain crucial facts are within the purview of the statute, and on this basis we conclude that the taxpayer is entitled to the free port exemption.

■ The Commission argues that it did not intend to "stipulate itself out of court." We are quite certain that was not the Commission's motive. When the Commission, however, stipulates, for example, that the component truck parts were "assembled, bound and joined," the precise phrase of the statute, we will not consider its contention made initially on oral argument in this court that the component parts were not "assembled, bound and joined" within the contemplation of the statute.

■ The most pertinent parts of the stipulation which we conclude foreclose the Commission are as follows:

"II

"On January 1, 1966, plaintiff was the owner

statute states that the exemption stated shall be liberally construed.

of certain wheels, axles and other personal property, all of which will hereinafter be referred to as the Subject Property. The Subject Property was goods, wares and merchandise manufactured or produced outside the State of Oregon, purchased by plaintiff outside the State of Oregon and brought into the state by plaintiff.

"*　*　*　*　*

"IV

"At all times material herein, the Subject Property was held in private storage in segregated lots, was designated as being 'in transit' upon the books and records of the warehouse wherein the same was located, and, while being so held, was assembled, bound and joined to railroad car frames manufactured by plaintiff and destined for sale in the ordinary course of trade or business.

"V

"At all times material herein, plaintiff manufactured railroad cars for railroad companies, including Southern Pacific Company, Union Pacific Railroad Company, Great Northern Railway Company, and St. Louis Southwestern Railway Lines. Title to the railroad cars was transferred to financial institutions, whose offices were located outside the State of Oregon. All of the railroad cars, including the Subject Property which was assembled, bound and joined thereto, were delivered by plaintiff to the railroad company on the tracks at plaintiff's plant in Portland, Oregon. The railroad cars, including the Subject Property which was assembled, bound and joined thereto, were destined for shipment and were forthwith shipped to out-of-state destinations [other than the counties of origin of the Subject Property] by the railroad company to whom plaintiff delivered the same."

We respectfully take issue with the statement in the dissent that making the stipulation the basis for

our affirmance will come as a surprise to the parties. Upon reargument, counsel for the taxpayer stated without contradiction, that after the stipulation was entered into, which was after the Commission hearing but before the tax court hearing, he relied upon the stipulation as evidencing an abandonment by the Commission of its previous position that the assembly of the component parts of the trucks was manufacturing.

The dissent's interpretation of the stipulation, that it only admits that the truck parts were "assembled, bound and joined" to the railroad car frames, and not that it admits that the component truck parts themselves were "assembled, bound and joined," is not the interpretation which the Commission places upon its stipulation. In oral argument the Commission stated that by the stipulation it intended to admit that according to definitions in Webster's Dictionary the component parts of the truck were "assembled, bound and joined" together but it was not intending to thereby admit that they were "assembled, bound and joined" as that phrase is used in the statute.

Affirmed.

O'CONNELL, J., dissenting.

The majority opinion disposes of this appeal upon the technical ground that the State Tax Commission has inadvertently stipulated itself out of court. This manner of disposing of the case will come as a surprise to counsel for both plaintiff and defendant because that point was not made as a basis for deciding the case, either in the Tax Court or in the briefs or in oral argument on appeal. Counsel for both parties argued the case both here and below on the assumption

that the outcome would rest upon the interpretation of ORS 307.810.

The pertinent parts of the stipulation upon which the majority rely to foreclose the Tax Commission from arguing the substantive question of the interpretation of the statute are as follows:

"At all times material herein, the Subject Property was held in private storage in segregated lots, was designated as being 'in transit' upon the books and records of the warehouse wherein the same was located, and, while being so held, was assembled, bound and joined to railroad car frames manufactured by plaintiff and destined for sale in the ordinary course of trade or business.

"* * * * *

"The Subject Property was not changed in form or in shape by plaintiff in the process of assembling, binding and joining the same to the railroad car frames. For example, the physical characteristics of the wheels and axles remained the same after they were assembled, bound and joined as aforesaid.

"* * * * *

"At all times material herein, plaintiff manufactured railroad cars for railroad companies, including Southern Pacific Company, Union Pacific Railroad Company, Great Northern Railway Company, and St. Louis Southwestern Railway Lines. Title to the railroad cars was transferred to financial institutions, whose offices were located outside the State of Oregon. All of the railroad cars, including the Subject Property which was assembled, bound and joined thereto, were delivered by plaintiff to the railroad company on the tracks at plaintiff's plant in Portland, Oregon. The railroad cars, including the Subject Property which was assembled, bound and joined thereto, were destined for shipment and were forthwith shipped to out-of-state destinations [other than the counties of

origin of the Subject Property] by the railroad company to whom plaintiff delivered the same."

In interpreting this stipulation it is to be remembered that the boxcars consist of two major components: (1) the trucks and (2) the frames. The frames are concededly subject to taxation. The only issue is the taxability of the trucks. In the stipulation the Tax Commission recognizes that the *trucks* are "assembled, bound and joined" to the *frames*. That process of conjoining the two principal parts of the boxcars is of no significance in deciding the issue in this case. The question in the present case is whether the trucks alone are formed by the process of the component parts being "assembled, bound and joined" within the meaning of the statute. The stipulation does not constitute a concession that the component parts of the trucks were joined by a process of being "assembled, bound and joined," but merely a concession that the trucks are "assembled, bound and joined" to the frames.

Even if the stipulation is read to mean that the trucks are formed by assembling, joining and combining the component parts, the stipulation should not be interpreted to preclude the Tax Commission from presenting the issue of the applicability of the statutory exemption.

Plaintiff would concede that the exemption would not apply in every case where the taxpayer assembles, joins and combines various items into a new unit. The exemption applies only to personal property *in transit* and when the property is destined for sale outside the state.

Even if the stipulation is taken as a concession that the parts of the truck are assembled, bound and

joined to form the trucks, the stipulation should be construed as a concession only that they were so conjoined under circumstances not falling within the intendment of the statute exempting goods in transit.

Considering, then, the issue argued on this appeal, I would hold that the trucks did not fall within the statutory exemption. As stated in *Freightliner Corp. v. Dept. of Rev.*, 3 OTR Adv Sh 577, 581:

"* * * The purpose of the act [free port statute] was to promote Oregon as a storage and distribution center for goods brought into this state for transshipment out of state."

Plaintiff is not in the business of warehousing goods; it is in the business of manufacturing boxcars. The statute was not intended to provide an exemption for goods shipped into Oregon for the purpose of manufacturing them into a finished product in Oregon. The present case cannot be distinguished from *Freightliner Corp. v. Dept. of Rev., supra.* In that case parts were shipped into the taxpayer's plant where they were assembled into motor trucks. In holding that the statutory exemption did not apply, the Tax Court said:

"The evidence clearly establishes that plaintiff is in the business of manufacturing trucks; it is not in the business of warehousing or being a storage and distribution center for goods brought into this state for transshipment out of state. Although the statute provides that the exemption is not lost because the goods are assembled, bound or joined while in the warehouse, the plaintiff's business of building trucks starting with a frame rail and ending with a completed truck ready for delivery goes beyond the type of assembling, binding or joining contemplated by the free port statute.
"* * * * *

"If the plaintiff as a manufacturer of trucks is entitled to the benefit of the free port act, then

every manufacturer in Oregon who purchases parts from out of state and assembles them into a unit for shipment out of state is entitled to exemption. This is not the warehousing, storing and distributing that was intended by the act." 3 OTR Adv Sh at 582.

The foregoing language is applicable to the present case.

I see no essential difference between the character of the process employed by Gunderson Bros. in assembling the boxcar trucks and the process employed by *Freightliner* in assembling the motor trucks. The fact that the assembly process in *Freightliner* was somewhat more complicated is not controlling—the important factor is the character of the taxpayer's activity in assembling the goods. It is clear in both cases that the taxpayer assembled the parts into a finished product as a part of its business of manufacturing a product for sale and not as a part of a warehousing or storage business.

The judgment should be reversed.

HOLMAN and SCHWAB, JJ., join in this opinion.